# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
## No. 18-1878V
UNPUBLISHED

|  |  |
|---|---|
| MICHELLE DANIELSON,<br><br>     Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>     Respondent. | Chief Special Master Corcoran<br><br>Filed: December 29, 2020<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza (Flu)<br>Vaccine; Shoulder Injury Related to<br>Vaccine Administration (SIRVA) |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.*

*Ryan Daniel Pyles, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION AWARDING DAMAGES[1]

On December 6, 2018, Michelle Danielson filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that she suffered a shoulder injury related to vaccine administration ("SIRVA"), a defined Table Injury, after receiving the influenza ("flu") vaccine on October 10, 2017. Petition at 1, ¶¶ 1, 8. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters.

For the reasons set forth below, I find that Petitioner is entitled to an award of damages in the amount **$119,443.14, representing $110,000.00 for her past pain and**

---

[1] Because this Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

**suffering, \$7,922.22[3] for her future pain and suffering, and \$1,520.92 for her unreimbursed out-of-pocket expenses.**

## I.      Relevant Procedural History

After the case's filing, from November 2019 through May 2020, the parties attempted to reach an informal settlement in this case. After reaching an impasse, Respondent agreed to concede entitlement so that I could determine the appropriate amount of damages based upon written briefs and oral arguments at an expedited "motions day" hearing. *See* Rule 4 Order, issued June 2, 2020, ECF No. 28. Thus, on July 17, 2020, Respondent filed a Rule 4(c) Report conceding that Petitioner's injury met the Table definition for SIRVA (ECF No. 29), and I issued a Ruling on Entitlement finding Petitioner entitled to compensation (ECF No. 30). The parties completed their briefing by December 4, 2020. At the conclusion of the expedited hearing on December 11, 2020,[4] I orally informed the parties of my determination, which is more formally set forth herein.

## II.      Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed \$250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at \*22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at \*9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for

---

[3] As required by the Vaccine Act, the amount I am awarding for Petitioner's future pain and suffering, a yearly award of \$250 for the remainder of her life, has been reduced to its net present value. Section 15(f)(4)(A).

[4] An official recording of the proceeding was taken by court reporter, and a link to instructions on the court's website detailing how to order a certified transcript or audio recording of the proceeding can be found in the minute entries for this proceeding. Minute Entry, dated Dec. 11, 2020; *see also* www.uscfc.uscourts.gov/trans (last visited Dec. 11, 2020).

emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[5] *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

### III.     Appropriate Compensation for Petitioner's Pain and Suffering

Petitioner requested $140,000.00 for her past pain and suffering, $1,694.80 for her past out-of-pocket expenses,[6] and $1,000.00 per year for her future pain and suffering. Petitioner's Brief on Damages ("Pet. Brief") at 11. She alleges that she suffered intense pain within hours of vaccination which continued at a level described as moderate to severe for more than three years. *Id.* at 13-14. Describing the treatment she received, Petitioner claims she obtained no "lasting relief" and has exhausted all treatment options. *Id.* at 16.

---

[5] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

[6] At the expedited hearing, Petitioner sought to include an additional $150.00 from an expense recently incurred. I instructed Petitioner to forward the documentation related to this expense to Respondent after the hearing to determine if Respondent had any objection to this additional amount. On December 14, 2020, Petitioner's counsel informed me that the parties had been unable to reach an agreement regarding this additional expense. *See* Informal Remark, dated Dec. 14, 2020. Petitioner's counsel initially indicated she would be filing the documentation related to this expense, along with an explanation of the parties' positions. *Id.* In a subsequent email, Petitioner's counsel indicated Petitioner had decided to forego any compensation for this expense. *See* Informal Remark, dated Dec. 29, 2020.

In reaction, Respondent maintained Petitioner should be awarded only $100,000.00 for her past pain and suffering and $1,347.03 for her past out-of-pocket expenses, with no future pain and suffering component. Respondent's Brief on Damages ("Res. Brief"). *Id.* at 1, 19. He also challenged chiropractic co-pays totaling $347.77, as they were related to spinal adjustments received both prior to and after vaccination, rather than Petitioner's SIRVA. *Id.* at 1, 1 n.1, 19. To support his arguments, Respondent cited the more than four months which passed before Petitioner sought treatment for her SIRVA (though she mentioned her pain during an earlier chiropractic appointment, *id.* at 18 n.7), the lack of evidence showing Petitioner required prescription pain medication other than for a limited time period during 2018, the fact that Petitioner attended only limited physical therapy ("PT") and most of her chiropractic appointments were for cervical and thoracic ("CT") pain, and the lack of evidence to support Petitioner's claim that her SIRVA has interfered with her employment as a nurse. *Id.* at 8-19.

The medical records in this case establish that Petitioner was seen by her chiropractor for CT pain both prior to and after vaccination. *See generally* Exhibit 2. For example, in this one-month timeframe before and after receipt of the relevant vaccine, Petitioner was treated for this pain on nine occasions, but mentioned her left shoulder pain only once during the second of five appointments attended post-vaccination. *Id.* at 14-33. Similarly, Petitioner failed to mention her left shoulder pain during a visit to her primary care provider ("PCP") for numerous other conditions, such as insomnia and anxiety, on November 29, 2017, approximately one and a half months after vaccination. Exhibit 3 at 4-5. Petitioner did not seek medical care for her SIRVA until seen by her PCP on February 23, 2018, more than four months after vaccination. *Id.* at 6-7. Thus, while I accept that Petitioner's left shoulder pain began immediately (as noted by the social media post she provided, Exhibit 12 at 1) for purposes of determining entitlement under the Table, the evidence does not support her claims that this initial pain was especially severe.

The medical records support Petitioner's claim of more significant pain beginning in early 2018, when she sought treatment from her PCP and then an orthopedist during late March through early May 2018. Exhibits 3 at 6-7; 4 at 4-7. While treated by her orthopedist, Petitioner received two injections and underwent an MRI which showed evidence of bursitis and an injury to her bone as she claimed. Exhibit 4 at 4-12. For the first time since late October 2017, Petitioner mentioned her left shoulder pain during a July 2018 visit to her chiropractor. Exhibit 2 at 4-5. When first evaluated for PT in August 2018, she reported significant levels of pain, eight and nine out of ten, with rest and activity respectively. Exhibit 5 at 3. Petitioner's orthopedist described her condition as unchanged during a September 17, 2018 visit. Exhibit 19.

From July through September 2019, Petitioner sought chiropractic care for her back, neck, and left shoulder pain from another clinic. The records from those visits show that she received some good pain relief which allowed her to engage in activities such as mowing the yard and kayaking, followed by some "flare-ups" of pain. *E.g.,* Exhibit 11 at 3-4. Petitioner attended 11 PT sessions during October through November 2019. Exhibit 16. At a session on November 12, 2019, Petitioner was reported to be happy with her progress. *Id.* at 6. Nine days later, she reported pain and inquired about other treatments, a nerve block. *Id.* at 8. Noted to be more independent with her home exercise program, Petitioner was discharged from PT in May 2020. *Id.* at 16. She continued to complain of left shoulder pain when visiting her chiropractor. Exhibit 17. And, during a visit with her PCP on October 6, 2020, Petitioner reported her level of pain as five out of ten. Exhibit 18 at 1.

When seen by a second orthopedist in October and November 2018, Petitioner's pain level had improved to five to ten out of ten. Exhibit 13 at 4-6. A second MRI showed continued bursitis, but no further evidence of the bone injury noted in her first MRI. *Id.* at 7-10. On November 1, 2018, Petitioner emailed her prior orthopedist, informing him that she was "still dealing with a strong amount of pain and unable to carry out normal daily routines." Exhibit 10 at 8. She asked about further treatment, specifying mentioning surgery to scrape out any inflamed tissue. *Id.* Comparing Petitioner's two MRIs, the orthopedist indicated he saw "slightly more soft tissue inflammation compared to the prior MRI and slightly less bone irritation." *Id.* at 7. Noting that he was not a surgeon, the orthopedist encouraged her to continue her current treatment with the orthopedic surgeon she was seeing and suggested that she pursue consultations at other clinics if unable to obtain relief. He added that he had "exhausted *conservative* treatment options that have helped past patients." *Id.* (emphasis added).

After receiving a third injection on November 29, 2018, Petitioner appears to have obtained additional relief. Exhibit 10 at 10. Her chiropractic records illustrate this improvement, revealing continued complaints of both CT and left arm pain in November 2018 and a mention of CT pain only during a December 4, 2018 visit. Exhibit 14 at 1-5. During a January 3, 2019 chiropractic visit, Petitioner states that her left shoulder pain was improving until she experienced a difficult hysterectomy in late December 2019. *Id.* at 6. Records from additional chiropractic visits in January through April show treatment mainly for cervical and neck pain. *Id.* at 6-16. Petitioner does not specifically mention her left shoulder pain again until May 31, 2019. *Id.* at 17. Complaining of CT, lower back, and left shoulder pain, Petitioner described her shoulder pain as stabbing with certain movements. She added that she obtained mild temporary relief "using ice, heat, analgesic ribs, and self massag[e]." *Id.* Petitioner also complained of left shoulder pain to her PCP on June 17, 2019, indicating "some type" of daily pain. Exhibit 10 at 3. However, she did not describe the level of her pain.

Relying on the aforementioned record, Petitioner argues that her circumstances closely resemble those experienced by the petitioner in *Binette*,[7] who was awarded $130,000.00 and $1,000.00 per year for past and future pain and suffering, respectively. She further contends her experiences were more severe than those faced by the petitioner in *Cooper*,[8] who was awarded $110,000.00 for past pain and suffering. Pet. Brief at 15-18. Respondent counters that the *Binette* petitioner received more consistent orthopedic care, and provided more persuasive evidence of the permanency of her condition. Res. Brief at 14-16.

I find that Petitioner's SIRVA more closely resembles the injury suffered by the *Cooper* petitioner – making the past pain and suffering award from that case the better comparable herein. Ms. Danielson, like the *Cooper* petitioner, experienced prior and continued pain in areas other than the left shoulder where she received her vaccination. Cooper, 2018 WL 6288181, at *3. In contrast, the Petitioner in *Binette* had no reports of pain prior to suffering her SIRVA injury. Additionally, the *Binette* petitioner received more immediate and consistent treatment, suggesting a more pronounced injury. *Binette,* 2019 WL 1552620, at *3-8. And Petitioner received only three injections compared to the five administered to the *Binette* petitioner. *Id.* at *4-8, 13. Petitioner correctly observes that the petitioner in *Cooper* refused any injection, but fails to note that the *Cooper* petitioner participated in nearly twice the number of PT sessions over a much long period of time, two years. *Cooper,* 2018 WL 6288181, at *3-8.

There also are similarities between Petitioner's case and the SIRVA Injury suffered by the petitioner in *Dhanoa*,[9] who was awarded only $85,000.00 for past pain and suffering. However, I recognize the *Dhanoa* petitioner suffered more moderate levels pain and showed greater improvement with treatment. 2018 WL 1221922, at *6. I thus find this comparable case of less value in arriving at a pain and suffering award in this case.

Regarding Petitioner's request for a future pain and suffering component, I find the evidence Petitioner advances to show the continued effects of her SIRVA injury is not as compelling as that offered by the *Binette* petitioner. In particular, the medical records show that while followed by several setbacks, Petitioner obtained relief from treatment, such as the third injection she received and chiropractic and PT sessions she attended. As evidenced by the differences in Petitioner's MRIs, her bone injury was improving.

---

[7] *Binette v. Sec'y of Health & Human Servs.,* No. 16-0731V, 2019 WL 1552620 (Fed. Cl. Spec. Mstr. July 8, 2019).

[8] *Cooper v. Sec'y of Health & Human Servs.,* No. 16-1387, 2018 WL 6288181 (Fed. Cl. Spec. Mstr. Nov. 7, 2018).

[9] *Dhanoa v. Sec'y of Health & Human Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018).

However, while not as definitive as the statement provided to the petitioner in *Binette*, Petitioner was told by a prior orthopedist in November 2018 that she had exhausted all conservative treatment options. Additionally, Petitioner continued to report pain with movement the following year, in 2019. Thus, I will award compensation for Petitioner's future pain and suffering, but at a lower amount than that requested - $250 per year, rather than $1,000 per year. This sum will also be reduced to net present value, utilizing the multi-pronged approached I employed in prior cases,[10] based on a future life expectancy of approximately 48 additional years.

Finally, there is the issue of calculating the amount of prior-incurred out-of-pocket expenses. While the chiropractic care Petitioner received was more properly related to the CT pain she experienced both before and after vaccination, she was also treated for her left shoulder pain during some sessions as well – meaning that not all of these costs are properly attributed to the SIRVA injury Petitioner experienced. Thus, I will compensate Petitioner for approximately one-half of this amount, or $173.89.

## IV.   Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $110,000.00 represents a fair and appropriate amount of compensation for Petitioner's past pain and suffering. I also find that Petitioner is entitled to $1,520.92 for her past expenses. For her future pain and suffering, I find that an award of $250 per year for life is a fair and appropriate amount of compensation, for a total award of $12,000.00 - reduced to its net present value of $7,922.22.**

**I thus award Petitioner a lump sum payment of $119,443.14, representing $110,000.00 for her actual pain and suffering, $7,922.22 for her projected pain and suffering, and $1,520.92 for her actual unreimbursable expenses in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

---

[10] A one percent discount rate is used for the first fifteen years, with a two percent discount rate used for any additional years. *Curri v. Sec'y of Health & Human Servs.*, No. 17-0432V, 2018 WL 6273562, at \*7 (Fed. Cl. Spec. Mstr. Oct. 31, 2018). Using the life expectancy calculator found on the Social Security Administration's website, Petitioner is expected to live another 47.6 years. https://www.ssa.gov/cgi-bin/longevity.cgi (last visited on Dec. 17, 2020). As in *Curri*, an online present value calculator was used to perform the appropriate calculations. 2018 WL 6273562, at \*7 n.4; *see* https://financial-calculators.com/present-value-of-an-annuity-calculator (compounding annually) (last visited Dec. 27, 2020). Utilizing a one percent discount rate for years 1 through 15, the total of $3,750.00 ($250 multiplied by 15) is reduced to a net present value of $3,466.26. Utilizing a two percent discount rate for years 16 through 48, the total amount of $8,250.00 ($250 multiplied by 33) is reduced to a net present value of $4,455.96.

The clerk of the court is directed to enter judgment in accordance with this decision.[11]

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master

---

[11] Pursuant to <u>Vaccine Rule 11(a)</u>, entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.